UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DARCIE  BIRGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:12-cv-1159-WTL-DKL |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Darcie Birge requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court now rules as follows.

## I.     PROCEDURAL HISTORY

Birge filed an application for DIB on March 23, 2009, alleging disability beginning February 26, 2009, due to degenerative disc disease, seronegative spondyloarthritis, rheumatoid arthritis, asthma, chronic obstructive pulmonary disease, and depression. Birge's application was initially denied on August 30, 2010, and again upon reconsideration on November 23, 2010. Thereafter, Birge requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on February 17, 2012, via video conference before ALJ Melody Paige. Birge and her counsel appeared in Danville, Illinois, and the ALJ presided over the hearing from Valparaiso,

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration after this case was filed. She is therefore substituted as the Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

Indiana. During the hearing, Bob Hammond testified as a vocational expert. On March 9, 2012, the ALJ issued her decision denying Birge's application for benefits. The Appeals Council upheld the ALJ's decision and denied a request for review on June 28, 2012. This action for judicial review ensued.

## II.    EVIDENCE OF RECORD

The relevant medical evidence of record follows.

According to Birge, she has suffered from joint pain since she was thirteen years old. At the age of 24 or 27, she was diagnosed with ankylosing spondylitis.[2] Since then, she has experienced chronic pain in her back, knees, hands, neck, shoulders, elbows, and arms. Although Birge has suffered from chronic pain for a number of years, she alleges disability beginning February 26, 2009, the same day she was let go from her job as a restaurant manager.[3] During a portion of the time Birge alleges she was disabled, Birge received unemployment benefits from the State of Indiana. Thus, from 2009 to 2010, Birge certified to the State that she was actively looking for work and, if she found a job, she was ready, willing, and able to accept it.

On February 19, 2009, Birge met with Dr. Rajan Kheradiya at St. Vincent Internal Medicine Residency ("St. Vincent") and complained of arthritis and specifically, pain in her back, neck, and arms, stiffness in her joints, and difficulty straightening her left arm. Dr. Kheradiya's treatment notes indicate that Birge had a history of ankylosing spondylitis, she had

---

[2] Ankylosing spondylitis "is a form of arthritis that primarily affects the spine, although other joints can become involved. It causes inflammation of the spinal joints (vertebrae) that can lead to severe, chronic pain and discomfort." *About Ankylosing Spondylitis*, SPONDYLITIS ASSOCIATION OF AMERICA, http://www.spondylitis.org/about/as.aspx (last visited July 25, 2013).

[3] Birge worked as a manager at her parents' restaurant from 1994-2009. She became unemployed when the new owners of the restaurant chose not to retain her.

received prescriptions for Percocet and Vicodin in the past, and she previously had Remicaid treatment in 2008 "which helped [the] pain significantly." Tr. at 264.

On June 23, 2010, Birge met with Dr. Sarah Thomas at St. Vincent. According to Dr. Thomas, Birge was "unable to straighten her right elbow and turn her head to look behind her. *Id.* at 442. Dr. Thomas concluded that Birge's "clinical picture appears to be more [consistent with] psoriatic arthritis rather than ankylosing spondylitis." *Id.* On July 19, 2010, an x-ray of Birge's sacrum and coccyx revealed "moderate symmetric inflammatory sacroiliitis."[4] *Id.* at 284. On July 29, 2010, Dr. Thomas noted that Birge was on Humira and was "doing very well." *Id.* at 439. The notes also provide that Birge "has noted an improvement in pain in her neck and back and [a] decrease in swelling and pain in her knee joints." *Id.*

Birge met with Dr. Evan Schiffli at St. Vincent on September 22, 2010. On that date, Dr. Schiffli noted that Birge's ankylosing spondylitis was stable and her only complaint was difficulty sleeping. Several days later, on October 21, 2010, Birge complained of soreness, stiffness, and swelling in her knees. During that visit, Dr. Thomas aspirated Birge's right knee.

On November 10, 2010, Dr. Kenneth Neville completed a Psychiatric Review Technique. He concluded that Birge's depression was not severe and she did not have any restrictions in daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace, or episodes of decompensation.

On December 23, 2010, Dr. Thomas noted that Birge had stopped taking several of her medications, was "stiff all over," and had "pain in her hands, neck, and knees." *Id.* at 420.

---

[4] "Scaroiliitis . . . is an inflammation of one or both of your sacroiliac joints – the places where your lower spine and pelvis connect. Sacroiliitis can cause pain in your buttocks or lower back, and may even extend down one or both legs." *Sacroilitis*, MAYO CLINIC, http://www.mayoclinic.com/health/sacroiliitis/DS00726 (last visited July 25, 2013).

3

Birge met with Dr. Schiffli on April 15, 2011. He observed that her ankylosing spondylitis was under better control with Cimzia and Skelaxin. Dr. Thomas reiterated Birge's improvement on April 19, 2011, and opined that she was "doing very well." *Id.* at 371.

On November 21, 2011, Birge discussed her disability application with Dr. Schiffli and Dr. Schiffli referred her to physical therapy for a formal functional evaluation. According to Dr. Schiffli, Birge stated that "the meds cover up [her] pain/disability." *Id.* at 475. Dr. Schiffli "advised [Birge] that disability evaluates how [she is] ON optimal medical therapy, not without." *Id.* (emphasis in original). He also instructed her not to stop taking her medications before the functional evaluation. Dr. Schiffli opined that Birge "could certainly work with some lifting restrictions, i.e. a desk job, etc." *Id.*

On December 20, 2011, Birge underwent a Functional Capacity Evaluation ("FCE") with a physical therapist. The therapist opined that Birge could not squat or crouch, was unable to perform floor to waist movement, and had a limited ability to walk, stand, work overhead, kneel, and climb stairs. The therapist also opined that Birge could front-carry a maximum of fifteen pounds, had a waist-to-crown lifting capacity of eight pounds, and had a good sitting tolerance.

On February 15, 2012, Ray Burger, M.S., C.V.E., a vocational consultant contacted by Birge's counsel, reviewed the FCE and opined that Birge was "limited to sedentary work, due to the fact of a limited ability to walk and stand." *Id.* at 222. He further opined that Birge could not perform sedentary unskilled work, "due to unskilled work requiring a minimum of frequent use of the hand and fingers relating to a grip strength when performing unskilled sedentary work." *Id.* He concluded that "weakness and limited range of motion in the shoulders and elbows . . . is not going to allow her frequent use of the upper extremities at a frequent level. Thus, she is not capable to perform any type of competitive employment." *Id.*

4

### III.   <u>APPLICABLE STANDARD</u>

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by the court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion," *id.*, and the court may not

reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d

456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate,

justification for her acceptance or rejection of specific evidence of disability. *Scheck v.*

*Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her

analysis of the evidence in her decision; while "[s]he is not required to address every piece of

evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an

accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1177.

## IV.    THE ALJ'S DECISION

At step one, the ALJ found that Birge had not engaged in substantial gainful activity

since her alleged onset date of February 26, 2009. At step two, the ALJ concluded that Birge

suffered from the following severe impairments: degenerative disc disease, seronegative

spondyloarthritis, and rheumatoid arthritis. At step three, the ALJ determined that Birge's severe

impairments did not meet or medically equal a listed impairment. At step four, the ALJ adopted

the results of Birge's FCE and concluded that Birge had the residual functional capacity ("RFC")

to perform sedentary work,

> except that she can "front carry" up to 15 pounds and lift "waist to crown" up to 8
> pounds, but she can never lift from the floor to the waist. The claimant is unable
> to squat or crouch, but is capable of performing elevated work, forward bending
> and standing, and kneeling between 6% and 33% of the day. She can climb stairs
> and walk between 6% and 33% of the day, and sit between 34% and 66% of the
> day.

Tr. at 14.

Given this RFC, and taking into account Birge's age, education, and work experience, the

ALJ determined at step five that Birge could perform jobs existing in significant numbers in the

national economy, those being an order clerk, a production clerk, and a bill collector.

Accordingly, the ALJ concluded that Birge was not disabled as defined by the Act from February 26, 2009, through the date of her decision.

## V.    DISCUSSION

Birge advances several objections to the ALJ's decision; each is addressed below.

### A.  Failure to Seek Opinion of Medical Expert

According to Birge, "[m]edical expert opinion is required to determine whether [her] ankylosing spondylosis, degenerative disc disease, and rheumatoid arthritis meet or equals a listing." Birge's Br. at 10. Here, a physical consultative examination was not performed prior to the hearing and no medical expert was present at the hearing to offer an opinion regarding Birge's impairments. Thus, Birge contends that the ALJ improperly substituted her opinion for that of a medical expert when she determined that Birge's impairments did not meet or medically equal a Listing. The Court does not agree.

Whether a claimant's condition equals a listed impairment is "strictly a medical determination" and "the focus must be on medical evidence." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). With regard to consultative exams, an "AJL is not *required* to order such examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient." *Skinner v. Astrue*, 478 F.3d 836 (7th Cir. 2007) (emphasis in original) (citing 20 C.F.R. § 416.912(f), 416.917); *see also Howell v. Sullivan*, 950 F.2d 343, 348 (noting that "consultative examinations are not required unless they are necessary for the ALJ to make a disability determination."). As such, an ALJ's decision to call a medical expert is discretionary. 20 C.F.R. § 416.927(f)(2)(iii). Importantly, an ALJ's failure to adequately develop the record, "has been consistently held to constitute good cause sufficient to remand to the Secretary under 42 U.S.C. § 405(g) for taking of additional evidence." *Cannon*, 651 F.2d at 519. However, the

court gives deference to an ALJ's decision about how much evidence is sufficient to develop the

record and what measures are needed in to accomplish that goal. *See Nelms v. Astrue*, 553 F.3d

1093, 1098 (7th Cir. 2007); *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993).

In this case, the ALJ considered Listing 1.04,[5] disorders of the spine, and Listing 14.09,[6]

inflammatory arthritis, and concluded that Birge's impairments did not meeting the Listings. In

support of her argument, Birge neither points to any evidence suggesting that these Listings are

met or any evidence the absence of which renders the record undeveloped, nor does she identify

any other specific Listings that should have been considered. Indeed, the ALJ's determination

that the Listings are not met is supported by substantial evidence. In this regard, the ALJ

concluded that there was no evidence of "nerve root compression, spinal arachnoiditis, or lumbar

---

[5]Listing 1.04 requires "compromise of a nerve root . . . or the spinal cord," with:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

[6] Listing 14.09

requires evidence of persistent inflammation or deformity of one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively, or one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively, or involvement of two or more organs/body systems and at least two constitutional symptoms or signs.

Tr. at 14.

spinal stenosis resulting in pseudoclaudication." Tr. at 14. The ALJ also determined that there

was no evidence that Birge suffered from

> persistent inflammation or deformity of one or more peripheral weight-bearing
> joints resulting in the inability to ambulate effectively, or one or more peripheral
> joints in each upper extremity resulting in the inability to perform fine and gross
> movements effectively, or involvement of two or more organs/body systems and
> at least two constitutional symptoms or signs.

*Id.*

Based on the foregoing, the ALJ did not err in failing to order a physical consultative

exam. For these same reasons, the ALJ did not abuse her discretion in failing to call a medical

expert to testify at the hearing. Accordingly, the ALJ's determination at step three is not subject

to remand on this basis.

### B.  Failure to Address Contradictory Evidence in the Record

Birge also argues that the ALJ failed to address evidence in the record that was

contradictory to her RFC determination; specifically, the opinion of Ray Burger, the vocational

consultant contacted by Birge's counsel. The ALJ, however, did not err in this respect.

After reviewing the FCE, Burger opined that Birge:

[i]s limited to sedentary work, due to the fact of a limited ability to walk and
stand. Additionally, she has bilateral weakness in grip strength of her hands. Test
results also indicated [Birge] has weakness and limited range of motion of the
shoulders and elbows. . . .

Due to these limitations, it is my opinion Ms. Wood's[7] cannot perform sedentary
unskilled work due to unskilled work requiring a minimum of frequent use of the
hand and fingers relating to grip strength when performing unskilled sedentary
work. . . .

Her having weakness and limited range of motion in the shoulders and elbows, in
my opinion, is not going to allow her frequent use of the upper extremities at a
frequent level. Thus, she is not capable to perform any type of competitive
employment.

---

[7] The Court assumes Burger's reference to Ms. Woods is in error.

9

Tr. at 222.

Burger's opinion relates to Birge's RFC and the nature and severity of her impairments. Burger, however, is not a medical expert and does not have the requisite expertise to opine regarding these topics. As a vocational expert, Burger's expertise is limited to what jobs, if any, Birge can perform given the limitations determined by the ALJ, and the extent to which those jobs exist in the region and nation. More importantly, Birge's RFC and the nature and severity of her impairments are issues that are reserved to the Commissioner, 20 C.F.R. § 1527(d), and the Commissioner does "not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* at § 1527(d)(3). As such, the ALJ was not required to discuss or accept Burger's opinion.[8]

### C.  Failure to Articulate Application of SSR 96-7p and SSR 96-8p

Lastly, Birge argues that the ALJ failed "to articulate [her] consideration of each of the six factors enumerated in" SSR 96-7p, and failed to consider Birge's combined impairments as required by SSR 96-8p. The ALJ's application of these rulings, however, does not require reversal.

In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and

---

[8] Birge also appears to argue that the ALJ failed to follow SSR 96-9p which states:

Where there is more than a slight impact on the individual's ability to perform the full range of sedentary work, if the adjudicator finds that the individual is able to do other work, the adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country.

The ALJ, however, identified the jobs Birge is capable of performing and the number of jobs available in the region. *See* Tr. at 18.

10

limitations, 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify her finding with specific reasons. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). "[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citations omitted). Additionally, in determining a claimant's RFC, the ALJ must consider a claimant's combined impairments. S.S.R. 96-8p. At the same time, district courts "afford a credibility finding 'considerable deference,' and overturn [a finding] only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 36 F.3d 751, 758 (7th Cir. 2004)).

Here, the ALJ considered Birge's combined impairments as required by SSR 96-8p. *See, e.g.*, Tr. at 17 ("[T]he claimant's long longitudinal history of treatment of inflammatory spondylitis and degenerative disc disease does support some limitation to avoid prolonged standing and walking, along with heavy lifting and carrying.")

Additionally, the ALJ performed an appropriate credibility determination. The ALJ noted Birge's daily activities, level of pain and symptoms, limitations, aggravating factors, treatment history, and some of her medications, and determined that Birge's impairments were not as limiting as she alleged.[9] In doing so, the ALJ identified several specific reasons for her finding. For example, the ALJ noted that

- Birge suffered from her "long-standing condition for years," and she worked in her parents' restaurant for many of those years. Tr. at 16.

- Birge stopped working for reasons unrelated to her impairments. *Id.*

---

[9] The ALJ did not discuss the side effects of Birge's medications. However, Birge does not point to any side effect that would arguably limit her ability to work.

- Birge collected unemployment benefits during 2009 and 2010, during which time she maintained that she was disabled, and certified to state authorities that she was actively looking for work and able to accept employment if she found it. *Id.*[10]

- Birge's daily activities included light housekeeping, cooking, shopping for groceries, laundry, driving, using a computer, going out alone, and caring for her children and dog. *Id.* at 17.

- Birge's treating physician opined that she could perform light work. Tr. at 16.

Because the ALJ considered the relevant factors and supported her determination with specific reasons, her credibility finding is based on substantial evidence and is not patently wrong.[11]

## VI.   CONCLUSION

In this case, the ALJ satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

SO ORDERED:  07/26/2013

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[10] The ALJ accurately notes that "courts have been unwilling to hold that a claimant's decision to apply for unemployment benefits . . . should play no role in assessing [the claimant's] subjective complaints of disability." Tr. at 16 (citing *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir.)).

[11] However, the Court has decried the meaninglessness of portions of decision "templates," as recognized by recent Seventh Circuit opinions, until it is blue in the face, but to no apparent avail. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012).